**SECOND AMENDED AND RESTATED PROMISSORY NOTE**

Up to $809,961.80

Effective as of March 22, 2021
St. Louis, Missouri

For value received, Digital Medical Tech, Inc. and Matthew Nicholson (collectively, the "**Makers**" and, individually, a "**Maker**"), jointly and severally, promise to pay to the order of CB Capital Investments LLC, a Missouri limited liability company (the "**Payee**"), at 2451 Schuetz Road, Maryland Heights, MO 63043 or at such other place as may be designated in writing by the holder hereof, in lawful money of the United States of America in immediately available funds, the principal sum of up to Eight Hundred Nine Thousand Nine Hundred Sixty-One and 80/100ths Dollars ($809,961.80), together with interest thereon, at the rate or rates hereinafter specified, as follows:

1. Amendment and Restatement. This Second Amended and Restated Promissory Note amends and restates that certain Amended and Restated Promissory Note dated July 14, 2020 by Makers in favor of Payee in the original principal amount of $540,000, which amended and restated that certain Promissory Note dated June 26, 2020 by Makers in favor of Payee in the original principal amount of $435,000 (as further modified and amended from time to time, including as set forth in this document, the "**Note**.") Makers acknowledge and agree that the outstanding principal balance of the Note as of the date hereof is $559,961.80, all of which was received by Makers and constitutes good and valuable consideration for this Note.

2. Interest. This Note shall bear interest on the from time to time aggregate unpaid principal amount hereof at 10% per annum.

3. Interest and Principal Payments; Maturity; Advances.

(a) On the earlier of (a) December 31, 2021 or (b) the receipt by Digital Medical Tech, Inc. (the "**Company**") of investment funds in the amount of $2,000,000 or more, Makers shall pay to Payee an installment payment of principal in an amount equal to the sum of the then remaining principal balance of this Note, together with all accrued and unpaid interest as of such date. Such earlier date is referred to as the "**Maturity Date**."

(b) All advances under this Note shall be made under one revolving credit facility (the "**Revolving Facility**"). The maximum outstanding principal balance under the Revolving Facility shall be $809,961.80, of which $250,000 is available for advances pursuant to this Section 3(b) prior to the Maturity Date. A request for a draw on the Revolving Facility shall be made, or shall be deemed to be made, in the following manner: The Company shall give Payee notice (whether in writing, by telephone or otherwise) of the intention to borrow, in which notice the Company shall specify (i) the amount of the proposed borrowing, (ii) the use of the proceeds of such amount, together with the invoice or other documentation evidencing such use, and (iii) the proposed borrowing date. All requests for draws are subject to the approval of Payee, which approval may be withheld in the sole discretion of Payee. Repaid funds may not be redrawn. Payee may, in its sole discretion and in response to a request for an advance, pay any draw directly to any person or entity to whom the proceeds are intended to ultimately be paid by the Company, e.g., a vendor, and such funds shall be considered borrowed hereunder.

4. Prohibition on Dividends. No dividends shall be declared and paid by the Company to its stockholders so long as any amount under this Note remains outstanding without the Payee's prior written consent.

5. Use of Funds. The proceeds of this Note may be used by the Makers solely for the Company's working capital purposes.



EXHIBIT 1

6. Security. This Note is unsecured.

7. Late Charges. A late charge equal to seven percent (7%) of the payment amount shall be assessed for each payment not received at the address of Payee by any date on which it is due; provided, however, that should the due date fall on a Saturday, Sunday or legal holiday in the State of Missouri, then no late charge shall be assessed until the next business day. The "late charge" is for the purpose of defraying the expenses of Payee incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other remedy Payee may have and is in addition to any fees and charges of any agents or attorneys which Payee may employ upon the occurrence of an Event of Default hereunder, whether authorized herein or by law.

8. Application of Payments. All installments paid hereunder shall be in currently available funds and shall be applied first to all fees and expenses incurred by Payee in collecting any amount due pursuant to this Note, then interest on the unpaid principal balance of this Note, and the balance, if any, shall be applied to the principal sum hereof.

9. Payments Due on Saturdays, Sundays or Legal Holidays. If any payment of principal or interest due on this Note is payable on a day which is a Saturday, Sunday or legal holiday in the State of Missouri, then such payment shall be due on the next business day, the amount of such payment, in such case, to include all interest accrued to the date of actual payment.

10. Voluntary Prepayment. The indebtedness evidenced by this Note may be prepaid, in whole or in part, at any time. All prepayments shall be applied first to accrued interest and the balance to the reduction of the principal payments and shall not relieve Makers of making payments hereon when due.

11. Default. After maturity, by acceleration or otherwise, this Note shall bear interest at fifteen percent (15%) per annum ("**Default Rate**"), provided, however, in no event shall the Default Rate exceed the maximum rate permitted by law. Should:

(a) any Maker shall fail to pay any amount hereunder when due;

(b) except as provided in subsection (a) above, there be any material breach of (i) this Note by any Maker that is not cured within ten (10) days of receipt of written notice from Payee of such material breach or (ii) any other agreement between the Company, Payee, Investa Management Company, LLC or DMTI Capital Partners, LLC, on the one hand, and any Maker, on the other hand, that is not cured within any notice and cure period specified therein,

(c) any individual Maker die or become permanently disabled (as determined in the sole discretion of the Payee),

(d) Matthew Nicholson cease to be involved in the day to day business of the Company or the Company cease doing business or experience a material adverse change in its business, prospects, or financial condition (each of the foregoing, as determined in the sole discretion of the Payee),

(e) there be any change in the ownership of the Company or any disposition of all or substantially all of its assets to which the Payee has not granted its prior written consent, or

(f) any Maker (i) fail to pay, or admit in writing his, her or its inability to pay, his, her or its debts as they become due, or otherwise becomes insolvent (however evidenced); (ii) make an assignment for the benefit of creditors; (iii) file a petition in bankruptcy, be adjudicated insolvent or bankrupt, petition or apply to any tribunal for any receiver or any trustee of such



EXHIBIT 1

Maker or any substantial part of his, her or its property; (iv) commence any proceeding relating to such Maker under any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; (v) have commenced against such Maker any such proceeding which remains undismissed for a period of 45 days, or by any act indicates his, her or its consent to, approval of, or acquiescence in any such proceeding or the appointment of any receiver of or any trustee for such Maker or of any substantial part of his, her or its property, or allow any such receivership or trusteeship to continue undischarged for a period of 45 days; or (vi) take any action to authorize any of the foregoing

(each of the foregoing, an "**Event of Default**"), then the Payee, at its option and without notice or demand, may declare immediately due and payable the entire unpaid principal balance under this Note, together with all accrued interest thereon, and after the date of such default this Note shall bear interest at the Default Rate. In such case Makers shall pay to Payee all costs and expenses incurred in connection with efforts to collect any amount payable hereunder, together with attorneys' fees and expenses (including attorneys' fees for representation in proceedings under the Bankruptcy Code), regardless of whether litigation is commenced, together with interest on any judgment obtained by the Payee at the Default Rate, including interest at the Default Rate until actual payment is made to the Payee of the full amount due.

12. Consents. Each of the undersigned, as a Maker, and all others who are or who shall become parties primarily or secondarily liable on this Note, whether as endorsers, guarantors or otherwise, hereby agree that this Note may be renewed one or more times, the time for payment of this Note or any renewal Note extended, the interest rate or other terms of the indebtedness evidenced hereby changed, any party released, or any action taken or omitted with respect to any collateral security, including surrender of such security or failure to perfect any lien thereon, without notice and without releasing any of them, except as otherwise expressly agreed in writing, and the obligation of each such party shall survive whether or not the instrument evidencing such obligation shall have been surrendered or canceled. All such parties waive presentment, demand for payment, protest, notice of nonpayment or dishonor, notice of intent to accelerate and all other notices and demands under this Note and agree that failure of the Payee to exercise any of its rights hereunder in any instance shall not constitute a waiver thereof in that or any other instance. Any and all claims of lack of diligence in the enforcement of this Note are hereby waived by all who are or become parties to this Note. Every such party by becoming a party to this Note further waives any and all defenses which such party may have based on suretyship or impairment of collateral with respect to this Note.

13. Amendments and Waivers; Remedies. No amendment, modification, supplement, termination, consent, or waiver of any provision of this Note, nor consent to any departure therefrom, will in any event be effective unless the same is in writing and is signed by the party against whom enforcement of the same is sought. Any waiver of any provision of this Note and any consent to any departure from the terms of any provision of this Note is to be effective only in the specific instance and for the specific purpose for which given. Each and every right granted to Payee under this Note or allowed to it at law or in equity is deemed cumulative, and such remedies may be exercised from time to time concurrently or consecutively at Payee's option. No failure on the part of Payee to exercise, and no delay in exercising, any right under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right.

14. Assignment. This Note will be binding upon and inure to the benefit of each Maker and Payee and their respective heirs, executors, administrators, successors and assigns; provided, however, that no right or obligation under this Note may be assigned by any Maker without Payee's prior written consent, and any attempted assignment in violation of this Section shall be void. At any time, without any notice to any Maker, Payee may sell, assign, transfer, negotiate,

grant participations in, or otherwise dispose of all or any part of Payee's rights under or interests herein to any person or entity who, upon notice to any Maker by such person or entity, shall constitute the Payee hereunder from and after such notice. Each Maker hereby authorizes Payee to provide, without any notice to any Maker, any information concerning any Maker, including information pertaining to any Maker's financial condition, business operations or general creditworthiness, to any person or entity which may succeed to or participate in all or any part of the Payee's interest in this Note.

15. Notices. All notices hereunder shall be in writing and sent by certified or registered mail, return receipt requested, or by overnight delivery service, with all charges prepaid, to such party, at his, her or its address in the first paragraph hereof or on the signature page hereof and shall be deemed effective, given and received three (3) business days after deposited in the mail or one (1) business day after delivered to an overnight delivery service.

16. Governing Law; Severability. This Note shall be governed by and construed in accordance with the laws of the State of Missouri. In the event that any provision of this Note is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law. Any such provision that may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision of this Note.

17. Venue. Each party hereby irrevocably submits to the exclusive jurisdiction of the Circuit Court of the County of St. Louis, Missouri or the United States District Court of the Eastern District of Missouri, Eastern Division in any action or proceeding arising out of or relating to this Note, and the parties hereby irrevocably agree that all claims and counterclaims in respect of such action or proceeding may be heard and determined in any such court. The parties irrevocably waive any objection, including without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, which he, she or it may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions. The parties irrevocably consent to the service of any and all process in any such action or proceeding brought in any such court by the delivery of copies of such process to each such party, at his, her or its address in the first paragraph hereof or on the signature page hereof or by certified mail directed to such address.

**18. Waiver of Jury Trial. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH MAKER HEREBY WAIVES AND DISCLAIMS ANY RIGHT TO TRIAL BY JURY (WHICH PAYEE ALSO WAIVES AND DISCLAIMS) IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR RELATING TO THIS NOTE.**

19. Joint and Several Liability. The obligations of each Maker shall be joint and several. No Maker shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder.

20. Seniority. In the event of liquidation, dissolution or other similar event with respect to the Company, its assets or its business, the payment of the amounts due hereunder shall be senior and prior to any right of payment to (i) any holders of equity interests in the Company, with respect to dividends, indebtedness or other obligations to such holders of equity interests in the Company and (ii) any individual Maker.

21. Acknowledgments.



EXHIBIT 1

(a) The "**Prior Note**" means that certain Amended and Restated Promissory Note dated July 14, 2020 by Makers in favor of Payee in the original principal amount of $540,000, which amended and restated that certain Promissory Note dated June 26, 2020 by Makers in favor of Payee in the original principal amount of $435,000. This Second Amended and Restated Promissory Note is issued, not as a refinancing or refunding of or payment toward, but as a continuation of, the obligations of Makers pursuant to the Prior Note. Accordingly, this Second Amended and Restated Promissory Note shall not be construed as a novation or extinguishment of the obligations arising under the Prior Note, and its issuance shall not affect the priority of any lien granted in connection with the Prior Note. This Second Amended and Restated Promissory Note amends and restates the Prior Note in its entirety. Interest accrued under the Prior Note prior to the date hereof remains accrued and unpaid under this Second Amended and Restated Promissory Note and does not constitute any part of the principal amount of the obligations evidenced hereby. The obligations created or existing under, pursuant to, as a result of, or arising out of, the Prior Note shall be consolidated and continue in existence under this Second Amended and Restated Promissory Note, which obligations Makers acknowledge, reaffirm, and confirm to Payee.

(b) Makers and Payee intend that this Second Amended and Restated Promissory Note shall not in any manner (i) except as specifically provided herein, constitute the refinancing, refunding, payment or extinguishment of the obligations evidenced by the Prior Note or (ii) be deemed to evidence a novation of the outstanding balance of the obligations arising under the Prior Note or (iii) constitute a waiver or release by Payee of any rights of Payee, or of any default of Makers, that may now exist under the Prior Note or may hereafter exist under this Note.

22. Confirmation. Subject to the provisions of this Note: Each Maker hereby consents to, confirms, and acknowledges all terms, conditions, and representations set forth in this Note and agrees with Payee that all of the provisions of this Note are in full force and effect. If for any reason any provision of this Note is determined to be invalid, this Note shall be enforceable according to its original terms as heretofore amended from time to time. Each Maker represents to Payee and agrees that the covenants and agreements contained in this Note, except as herein modified, shall be and remain in full force and effect, subject to all the conditions and provisions contained in this Note and the amendments set forth in this Note. Each Maker hereby confirms and ratifies the loan evidenced by this Note.

23. Representations, Warranties and Covenants of Makers. Each Maker hereby represents, covenants, and warrants to Payee as follows:

(a) The representations and warranties in this Note are true and correct as of the date hereof.

(b) Such Maker has no defenses, set-offs, claims, actions, causes of action, damages, demands or any other claims of any kind or nature whatsoever, whether asserted or unasserted, with respect to this Note, any action previously taken or not taken by Payee, or against Payee

(c) Such Maker has the legal power and authority to enter into this Note and, when executed and delivered on behalf of such Maker, this Note shall constitute the respective valid and binding obligations of such Maker

(d) This Note is not being made or entered into with the actual intent to hinder, delay, or defraud any entity or person, and such Maker is solvent and not bankrupt.

(e) No action or proceeding, including, without limitation, a voluntary or involuntary petition for bankruptcy under any chapter of Title 11 of the United States Code, as now



EXHIBIT 1

constituted or hereafter amended, or any other applicable federal, state, or foreign bankruptcy law or other similar law, has been instituted by or threatened against any Maker.

(f) The execution of this Note by such Maker and the performance by such Maker of his, her or its obligations hereunder will not violate or result in a breach or constitute a default under any agreement to which such Maker is a party.

(g) Such Maker shall otherwise be in compliance with all of the terms and conditions of this Note and, in the absence thereof, then such Maker acknowledges and agrees that Payee shall be entitled to exercise any and all remedies available under this Note, and at law or in equity, with or without notice to any Maker, and no Maker shall take any steps to oppose or contest any such remedial action taken by Payee.

24. Release. In connection with this Note and the transactions provided for herein, each Maker hereby releases and discharges Payee, its officers, employees, managers, members, directors, agents, attorneys and representatives (collectively, the "**Releasees**") from and against any and all rights, claims, or causes of action against Releasees or any of them, directly or indirectly arising from actions or inactions by Releasees or any of them with respect to this Note and the obligations hereunder (the "**Obligations**"), as well as any and all rights of set-off, defenses, claims, causes of action, and any other bar to the Obligations, and any and all other documents, certificates, and other agreements evidencing or relating to the same. Each Maker hereby waives for himself, herself or itself, its successors and assigns, any present or future right to receive any notice, acknowledgment, demand, or other communication or correspondence, whether provided or required by law or otherwise, with regard to the Obligations or any transactions contemplated under this Note, or in any way relating to Payee's exercise of its rights and remedies with regard to any Maker or the Obligations. Each Maker hereby agrees to indemnify, defend, and hold Payee free and harmless from and against any and all losses, damages, costs or expenses (including attorneys' fees) incurred by Payee as a direct or indirect result of breach of any representation or warranty of any Maker contained in this Note and other agreements evidencing the Obligations. The terms of this Section shall survive the maturity and termination of this Note. Each Maker covenants and warrants that he, she or it is the sole owner of the claims hereby being released and that he, she or it has not assigned, in whole or in part, any of such claims to any other person or entity

25. Miscellaneous.

(a) This Note may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Note and all of which, when taken together, will be deemed to constitute one and the same agreement. A facsimile or scan of any original signature transmitted by one party to another party is effective as if the original was sent to any other party. The parties agree to accept a digital image of this Note, as executed, as a true and correct original and admissible as best evidence to the extent permitted by a court with proper jurisdiction.

(b) The terms and conditions set forth in this Note are the product of joint draftsmanship by all parties, each being represented by counsel, and any ambiguities in this Note or any documentation prepared pursuant to or in connection with this Note shall not be construed against any of the parties because of draftsmanship.

(c) In the event of any conflict between this Note and the Prior Note, this Note shall control.

26. **No Oral or Unexecuted Agreements**. The following notice is given pursuant to Section 432.047 of the Missouri Revised Statutes; nothing contained in such notice shall be deemed to limit or modify the terms of this Note. As used below, "Borrower(s)" shall mean Maker(s), and



EXHIBIT 1

"Creditor" shall mean Payee. "ORAL OR UNEXECUTED AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED, THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT."

*Remainder of page intentionally left blank. Signature page to follow.*

IN WITNESS WHEREOF, Makers have executed and delivered this Note as of the date first above written.

Digital Medical Tech, Inc.

By: Matt Nicholson

Name: Matthew Nicholson

Title: Founder

Address:
8601 Beverly Blvd.
Los Angeles, CA 90048

Matt Nicholson

Matthew Nicholson

Address:
8601 Beverly Blvd.
Los Angeles, CA 90048

**Accepted and acknowledged as of the date first written above:**

CB Capital Investments LLC

By: CB Capital Investments LLC, Manager

By: ____________________
Carl Bolm, Manager

Address:
2451 Schuetz
Maryland Heights, MO 63034



EXHIBIT 1